GARRETT et ux. v. HARRELL.

No. 31131. Feb. 29, 1944.

*146 P. 2d 829.*

Sigler & Jackson, of Ardmore, for plaintiffs in error.

Champion & Fischl, of Ardmore, for defendant in error.

RILEY, J. This is an appeal from a judgment rendered in the district court of Carter county in an action wherein plaintiffs in error, herein referred to as defendants, were sued, with Oscar Wilcoxen and Mrs. Oscar Wilcoxen, under an allegation that defendants and the Wilcoxens were partners in a restaurant business.

Prior to March 10, 1941, defendant in error, herein referred to as plaintiff, was the owner of a restaurant near the city of Ardmore. Oscar Wilcoxen and his wife, Ruby, managed the restaurant. Plaintiff sold the restaurant, fixtures, equipment, and stock to defendants. The bill of sale was made out to Laura Cathey (now Laura Garrett). Wilcoxen and his wife continued to operate the business with defendants. The agreement under which they operated said restaurant is the principal controversy.

Plaintiff was engaged in the meat business and sold meat to the restaurant on credit. On February 11, 1942, the restaurant owed plaintiff $276.45. On that date defendants, or defendant Laura Garrett, took over the business. Thereafter plaintiff commenced this action against Raymond Garrett, Laura Garrett, Oscar Wilcoxen, and Mrs. Os-

car Wilcoxen, alleging that defendants were partners in said business. There was a second cause of action based upon an alleged assignment of a similar account by Jim Lewis to the plaintiff. That cause of action was taken from the jury and is not here involved. Defendants Raymond Garrett and Laura Garrett denied under oath the allegation of the existence of the partnership.

Garrett paid plaintiff about $695 for the fixtures and equipment in the restaurant, including about $100 worth of merchandise.

Oscar Wilcoxen testified in substance that the terms under which he and his wife operated the restaurant after Garrett purchased the same were orally agreed upon between himself and defendant Raymond Garrett. His testimony was that Garrett was to buy the business and take one-third of the profits out until the purchase price was paid, and after that each was to own a one-half interest.

Defendant Raymond Garrett was operating a "player-piano" business. He placed self-playing pianos or phonographs in stores, cafes, etc., on a commission basis. Oscar Wilcoxen testified that Garrett was to place a piano in the restaurant and take one-half of the receipts therefrom and the other one-half would go into the business.

After the transfer of the business to the Garretts, defendant Raymond Garrett placed a "player-piano" in the cafe.

Defendant Raymond Garrett testified in substance that he bought the business, but it was his wife's money that paid for it, and that he had the bill of sale made to his wife. That he operated a number of "coin operated phonographs"; that the cafe was a good location for a piano and that he placed one in the restaurant and took out one-half the proceeds therefrom for the use of the piano. He then testified in substance that the agreement with Wilcoxen was that Wilcoxen should run the place and pay all the bills, all the monthly bills, utilities, rents, and pay-

664

ments on what fixtures they had which had not been paid out in full; that Wilcoxen was to give Mrs. Garrett one-third of the profits after all bills were paid, as rental on the fixtures, and Wilcoxen was to take two-thirds of the profits.

There were certain facts and circumstances tending to corroborate Wilcoxen in his version of the agreement. There were also some facts and circumstances tending to corroborate defendant Raymond Garrett in his version.

The amount of plaintiff's claim was not in controversy. The court submitted the issue of partnership to the jury. The verdict of the jury was for plaintiff and in effect sustained the claim of partnership.

Defendants say in their brief that the only question in the case is whether or not the testimony was sufficient to authorize the jury to find that there was a partnership existing between plaintiffs in error (the Garretts) and their codefendants (Oscar Wilcoxen and Mrs. Oscar Wilcoxen). Plaintiff agrees that this is the only question involved. The question was reserved by defendants by demurrer to plaintiff's evidence, motion for a directed verdict at the close of all the evidence, and a requested instruction directing a verdict for defendants. Judgment was for plaintiff upon the verdict, and defendants Raymond Garrett and Laura Garrett appeal by separate petitions in error. In their brief defendants cite a number of cases going to the question as to what state of facts is necessary to constitute a partnership. The rule applicable to the contention of plaintiff is stated in 40 Am. Jur. page 170, as follows:

"If the party investing the money is to be repaid out of the profits as profits and the amount is to depend on the business, so that it will fluctuate according to the amount of the net whole profits, there is such a community as to the profits as will create a partnership."

This rule was applied and followed in Peters v. Fry, 173 Okla. 30, 46 P. 2d 358. Therein it is held:

"A community of interest in the profits, or joint ownership in the property, resulting from the union of money and skill, or money and labor, of two or more persons combined for the purpose of carrying on business, constitutes the status of partners between the parties."

In Dinkelspeel v. Lewis, 50 Wyo. 380, 62 P. 2d 294, it is held:

"If party investing money is to be repaid out of profits as profits, and amount is to depend on business so that it will fluctuate according to amount of net whole profits, there is such a community as to profits as will create a partnership."

As applied to the contention of the defendants, the general rule seems to be that an agreement whereby any party leases to another real or personal property and is to receive as rent, or in addition to specified rent, a share of the profits derived by the lessee from the use of the property in his business, does not of itself create a partnership or make the parties partners as between themselves. 47 C. J. 681.

The testimony of Oscar Wilcoxen was in a measure corroborated by the fact that after Garrett had purchased the business there was $20 change in the cash register; it was decided that this was not enough to carry on the business. Thereafter the amount was increased to $50; $25 was furnished by Wilcoxen and $25 was furnished by defendants Garrett. This is admitted, and a notation thereof in writing was made by the defendant Laura Garrett. There is also uncontradicted evidence that after Garrett had purchased the business a cash register to be used in the business was purchased and a conditional sales contract for the purchase thereof was signed by R. E. Garrett and Oscar Wilcoxen. A number of installments on the cash register were paid out of the business. It is further shown, and admitted by defendants to be a fact, that after the purchase of said business the owner of the building in which it was operated built an additional room to be used as a dining room. The furniture therefor cost about $100. Laura Garrett

paid for same, but thereafter Wilcoxen paid her the sum of $30 to apply on the purchase price of said furniture; $25 was paid by him on April 21, 1941, and $5 was paid on May 26, 1941. The testimony of Oscar Wilcoxen, corroborated as it was, was sufficient, if believed by the jury, to bring the case within the rule stated in 40 Am. Jur. page 170, supra, and therefore sufficient to justify the jury in finding a verdict sustaining the allegation of partnership.

It is suggested that there was no evidence which would authorize the jury to return a verdict against the defendant Raymond Garrett. It is asserted that the evidence showed that he was simply acting as agent for his wife, Laura Garrett, and that he had no interest in the business. Raymond Garrett and Laura Garrett both testified that Laura Garrett furnished the money with which to purchase the fixtures, business, etc., from plaintiff. But there is evidence to the effect that defendant Raymond Garrett and Oscar Wilcoxen purchased the cash register used in the operation of the business. Raymond Garrett testified that he was interested in the purchase of the business for the reason that it was a good location for the operation of a player piano, in which business he was engaged. He did place a piano in the cafe, taking one-half of the proceeds thereof for the use of the piano, and the other one-half went into the business. These were circumstances from which the jury might reasonably infer that he was part owner of the business, notwithstanding the testimony to the contrary.

There is some contention that the trial court erred in refusing to give certain instructions offered by defendants. The matters contained in two of the three instructions so offered were fully covered by instructions given by the court. The other instruction offered and rejected requested the court to instruct the jury that before a verdict could be found that a partnership existed, the jury must first find that there was an agreement between the parties that they would share profits and losses in said business.

Title 54, section 6, O. S. 1941, provides that an agreement to divide profits of a business implies an agreement for corresponding division of losses, unless it is otherwise stipulated. The court so instructed the jury. It was therefore not necessary to instruct the jury that an express agreement to divide the losses was required. The instructions given by the court fairly stated the law applicable, and there appears no prejudicial error in the refusal of the requested instructions.

There being no substantial error, the judgment is affirmed.

The case-made contains a copy of supersedeas bond executed by D. S. Fraser as surety. Plaintiff moves for judgment against said surety in the sum of $276.45, with interest at 6% per annum from March 3, 1942, and for costs. Motion is sustained and judgment is hereby rendered in favor of the plaintiff, Sid Harrell, and against said surety, D. S. Fraser, in the sum of $276.45, with interest thereon at the rate of 6% per annum from March 3, 1942, and the costs of this action.